[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11814
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-02391-CC


JEROME CALVERT,

Plaintiff-Appellant,

versus

JANE OR JOHN DOE,
Individually and in His or Her
Official Capacity with Fulton County, Georgia,

Defendant,

FULTON COUNTY, GEORGIA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 25, 2016)

Before WILSON, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Jerome Calvert appeals the district court's grant of summary judgment to Fulton County on his Title VII retaliation claim. In 2004, Calvert filed a Title VII race discrimination claim against the county, his employer at the time. After his 2004 lawsuit settled, Calvert applied approximately 26 times for county positions but only received an interview for a juvenile court clerk position in 2011. According to the Panel Selection Recommendation Form,[1] Calvert was ranked fourth out of all the candidates and recommended for hire. However, he did not receive an offer, even though four candidates ranked below him did.

On appeal, Calvert first argues that the district court erred in excluding as inadmissible hearsay what Calvert characterizes as direct evidence of retaliation—namely statements by the juvenile court's human resources coordinator Kinsheka Smith that Calvert's job application was blocked because of his prior Title VII lawsuit against the county. Second, Calvert argues that the district court erred in granting summary judgment to the county because he presented circumstantial evidence that created a triable issue of fact under the convincing mosaic theory of Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011).[2] After

---

[1] The panel members combined their scores for the top five applicants on this form and then ranked the applicants according to score.

[2] Calvert also argues that the district court's grant of summary judgment violated his

2

careful review, we vacate and remand because Calvert has established a triable issue of fact.

I.

Calvert seeks to rely on statements by Smith as evidence of retaliation. Calvert testified that in August or September of 2011, he saw Smith at a meeting. Smith told him that he did well in the interview, but his "employment was blocked from up the street . . . because of the previous lawsuit that [he] had filed." According to Calvert, Smith explained that someone "either up the street or in her department" read an article about his previous lawsuit, and his job placement "was blocked from up the street." Calvert started to "push a little bit" to find out who blocked his employment, but Smith did not answer. Lewis Pittman, a friend of Calvert's who worked in the juvenile court and was on the selection panel, also testified that Smith told him "somebody up the street" did not want to hire Calvert because of the lawsuit. The district court excluded these statements as inadmissible hearsay.

We review a district court's evidentiary rulings at the summary judgment stage for abuse of discretion. City of Tuscaloosa v. Harcros Chemicals, Inc., 158 F.3d 548, 556 (11th Cir. 1998). "[T]he abuse of discretion standard of review

Seventh Amendment right to a jury trial, but we do not address that issue because he raised it for the first time on appeal. See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004).

3

recognizes that . . . there is a range of choice for the district court and so long as its decision does not amount to a clear error of judgment we will not reverse even if we would have gone the other way had the choice been ours to make." McMahan v. Toto, 256 F.3d 1120, 1128 (11th Cir. 2001).

A court cannot consider inadmissible hearsay when ruling on a summary judgment motion. Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999); see also Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a [summary judgement] motion must be made on personal knowledge [and] set out facts that would be admissible in evidence."). Under the Federal Rules of Evidence, hearsay is a statement "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is generally inadmissible with a few exceptions. See Fed. R. Evid. 802.

Calvert first argues that Smith's statements are admissible under Rule 801(d)(2)(D), which excepts from the definition of hearsay a statement used against a party that was "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). Courts have admitted employee statements under Rule 801(d)(2)(D) "where there is some evidence that the statements reflected some kind of participation in the

4

employment decision or policy of the employer." Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005).

In Rowell, the plaintiff claimed he was forced to retire because of his age during a reduction in force. Id. at 795. At summary judgment, the plaintiff tried to rely on testimony by a co-worker that the co-worker's supervisor said the company preferred to "keep the youth." Id. at 800. We concluded that the testimony was not admissible under Rule 801(d)(2)(D) because there was no evidence that the supervisor was involved in the decision to make the reduction in force or that he "had received any information" from upper management that indicated age was a factor. Id. at 801. The manager's statement was "in reality nothing but the inadmissible opinion of" a non-decisionmaker. Id. at 800.

In Kidd v. Mando American Corp., 731 F.3d 1196 (11th Cir. 2013), we "ma[de] clear that Rowell did not hold . . . that a non-decisionmaker can never be considered an agent under Rule 801(d)(2)(D)." Id. at 1209 (emphasis added). A "statement made by a non-decisionmaker may be both relevant and attributable to the defendant employer if the non-decisionmaker was sufficiently involved in the decisionmaking process leading up to the adverse employment action." Id. at 1208 n.16. However, we suggested in Kidd that if an employee's role in the adverse decision is "largely ministerial," then Rule 801(d)(2)(D) does not make that employee's statements admissible. Id. at 1210. We used "the gathering of

5

resumes submitted . . . for management to review" as an example of a ministerial role.  Id.

The district court did not abuse its discretion in finding that Smith's statements are not admissible under Rule 801(d)(2)(D).  The evidence does not show that Smith's duties rose above a ministerial role in the decisionmaking process.  Smith's duties consisted of scheduling interviews, answering questions, and being the designated contact person for acceptances.  Smith also selected interview questions, helped average applicant scores, and submitted the Panel Selection Recommendation Form to the final decisionmaker, the Juvenile Court's Chief Administrative Officer Omotayo Alli.  However, there is no evidence that Smith was "consulted by . . . management" or "otherwise included in the decisionmaking process."  See Kidd, 731 F.3d at 1210.  The record does not support the conclusion that Smith was sufficiently involved in communications between Alli and anyone "up the street" who had authority to block Calvert's candidacy.[3]

---

[3] We recognize that Smith sent Alli an email on June 27, 2011, between the interviews and the sending out of offers explaining that Calvert had been involuntarily terminated by the county (the event that led to his prior lawsuit).  Alli then forwarded this information to her boss, the Juvenile Court Chief Judge, with a note that Alli would call the judge later.  This email is important circumstantial evidence, as explained below.  However, it does not show that Smith was involved in the alleged blocking as an agent of the county.  It was Alli who forwarded the information and who said she would call the judge later.  Smith does not appear to be involved beyond giving information to Alli.

Calvert next claims that Smith's statements are admissible under Rule 801(d)(2)(C), which excludes from the definition of hearsay opposing party statements which were "made by a person whom the party authorized to make a statement on the subject." Fed. R. Evid. 801(d)(2)(C). Although there is evidence that Smith had the authority to answer questions regarding the interviewing process, there was no evidence that she was authorized to make statements to candidates regarding the actual reasons they were not hired.

Since neither Rule 801(d)(2)(C) nor Rule 801(d)(2)(D) applies, the district court did not abuse its discretion in sustaining the county's objection to the admissibility of testimony about Smith's alleged statement.

## II.

We review a district court's order granting summary judgment de novo. Zaben v. Air Products & Chemicals, Inc., 129 F.3d 1453, 1455 (11th Cir. 1997) (per curiam). Summary judgment is appropriate when, making all reasonable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact. Id.; see also Fed. R. Civ. P. 56(a).

When analyzing a retaliation claim based on circumstantial evidence, we usually employ the McDonnell Douglas analytical framework. Bryant v. Jones, 575 F.3d 1281, 1307 (11th Cir. 2009). Under this framework, a plaintiff must first establish a prima facie case by showing that (1) he engaged in an activity protected

under Title VII, (2) he suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action.  Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010).  Once a plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  Bryant, 575 F.3d at 1308.  If the defendant carries this burden, the plaintiff must demonstrate that the proffered reason was merely a pretext to mask retaliatory actions.  Id.

However, the McDonnell Douglas framework "is not the sine qua non for a plaintiff to survive summary judgment in a discrimination case."  Sims v. MVM, Inc., 704 F.3d 1327, 1333 (11th Cir. 2013).  "[A] plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."  Smith, 644 F.3d at 1328.  "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."  Id. (quotation and footnote omitted).

Calvert has established "a convincing mosaic of circumstantial evidence" that would permit a jury to infer that the county retaliated against him because of his previous lawsuit.  The record shows that Smith sent Alli an email between

8

Calvert's interview and the sending out of offers. The email informed Alli that Calvert had been fired by the county before, which was the event that led to his prior Title VII lawsuit. Alli forwarded this email to the Juvenile Court Chief Judge with a notation that she would call.

Alli testified that she did not remember any such call, and that she decided not to hire Calvert because he kept calling Smith and another employee and demanding to be hired based on his ranking from the court's internal scoring of the interviews, which he had somehow learned. However, this explanation is contradicted by Smith's testimony that Calvert called to ask about how he scored and Calvert's voicemail, left either July 11, 2011 or August 31, 2011, in which he asked if the county had completed its scoring yet. Calvert's voicemail established that he did not know if scoring had occurred as of July 11.

Further, Alli stated that Calvert's demands to be hired came "[a]fter the interview process but before the selection or consideration of any candidates." The timeline of events contradicts this explanation. The offer letters to the first five candidates selected were sent by July 5. However, Calvert did not leave the voicemail inquiring about scores until, at the earliest, July 11. These discrepancies create material issues of fact that preclude summary judgment.

In addition to this evidence, there was an unexplained asterisk and the word "skip" written next to Calvert's name on the interview score sheet and

9

recommendation form.  Smith admitted she wrote the word "skip" next to Calvert's name on the score sheet, but claimed she did not remember why she wrote it.  However, Smith also testified she was not the one who decided to "skip" Calvert; according to her, she did not "make the final decisions."

This evidence, combined with the fact that Calvert was not hired despite scoring within the top four candidates, creates a triable issue concerning the county's discriminatory intent.  See id. at 1328.  We therefore vacate the district court's grant of summary judgment and remand.

**VACATED AND REMANDED.**